IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| THOMAS & BETTS INTERNATIONAL, INC. and THOMAS & BETTS CORPORATION, | ) ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) ) | |
| vs. | ) ) | No.  05-2333 MaV |
| JOHN MEZZALINGUA ASSOCIATES, INC. d/b/a PPC, INC., | ) ) ) | |
| Defendant/Counter-Plaintiff. | ) ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIMS

Before the court is the October 20, 2005 motion of the defendant, John Mezzalingua Associates doing business as PPC, Inc. ("PPC"), for leave to file an amended answer and counterclaims. Plaintiffs Thomas & Betts International, Inc. and Thomas & Betts Corporation (collectively "T&B") oppose the motion. PPC has filed a reply memorandum in further support of its motion. For the reasons that follow, defendant PPC's motion is granted.

PPC's proposed amended answer and counterclaims seeks to add counterclaims for (1) monopolization and attempted monopolization under the Sherman Act, 15 U.S.C. § 2 and (2) unfair competition under the common law of the State of Tennessee. Specifically, PPC

alleges that T&B committed fraud on the Patent Office and enforced a patent it knew to be invalid in order to secure a monopoly. In its motion, PPC argues that the proposed amendments would not be futile because they are based on well-settled authority that such conduct can violate Section 2 of the Sherman Act. PPC also contends that its claims are generally considered compulsory counterclaims that, if not pleaded here, cannot be raised in a subsequent lawsuit.

In its response, T&B argues that the proposed amendments would be futile because PPC fails to allege sufficient facts to support each element of its counterclaims. Specifically, T&B claims that the proposed monopolization and attempted monopolization claims fail to allege relevant product and geographical markets, monopoly power, and dangerous probability of obtaining monopoly power. In addition, T&B argues that the proposed unfair competition claim fails to allege any conduct by T&B that constitutes the tort of unfair competition under Tennessee common law. As a result, T&B contends that PPC's counterclaims would not withstand a Rule 12(b)(6) motion to dismiss and are therefore futile.

In its reply, PPC argues that the factual allegations in its proposed amended counterclaims are more than sufficient to meet the elements of the claims. To the extent that the court believes that additional factual allegations are required for any of its

2

counterclaims, PPC asks the court to grant it further leave to file an amended answer and counterclaims within 20 days of the court's order.  The parties' positions on the sufficiency of specific allegations are discussed in detail below.

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires."  FED. R. CIV. P. 15(a). Under Rule 15(a), the court has some discretion in allowing amendments.  Factors to consider include prejudice to the opposing party, delay, and futility of amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A motion for leave to amend may be denied for futility if the pleading as amended could not withstand a motion to dismiss. *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005)(citation omitted).

A claim should not be dismissed under Rule 12(b)(6) for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)(citations omitted). When considering a Rule 12(b)(6) motion to dismiss, the court must assume that all of the well-pleaded factual allegations in the complaint are true and must construe those facts in a light most favorable to the plaintiff. *Morgan v. Church's Fried Chicken*, 829  F.2d 10, 12 (6th Cir. 1987)(citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  In addition, the

plaintiff is not required under the Federal Rules of Civil Procedure to set out in detail the facts upon which he bases his claim, but according to Rule 8 must only make a short and plain statement of the claim, , that gives the defendant fair notice of the claim and the grounds upon which it rests. *Conley*, 355 U.S. at 47 (citing FED. R. CIV. P. 8(a)(2)).

A.   <u>PPC's Proposed Counterclaims Alleging Monopolization and Attempted Monopolization</u>

At issue with respect to PPC's proposed monopolization and attempted monopolization claims is whether PPC sufficiently alleged two of the elements of those claims: (1) relevant product and geographical markets and (2) monopoly power or dangerous probability of obtaining monopoly power. *See Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002)(stating that "The first step in any action brought under § 2 of the Sherman Act is for the plaintiff to define the relevant product and geographic market . . . ." and describing generally the requirements of monopoly power or the dangerous probability of obtaining monopoly power).

1.   Relevant Product and Geographical Markets

a.   Product Markets

With respect to product markets, PPC's proposed amended counterclaim states that "T&B and PPC are competitors in the

4

compression coaxial cable drop connector market ('compression connector market')." (Proposed Amended Answer & Counterclaims, ¶ 90.) PPC defines a compression coaxial cable drop connector as "a type of coaxial cable drop connector that typically operates by the telescoping engagement of an inner and an outer body member to create a uniform seal between the outer layers of the coaxial cable and the connector." (*Id.* at ¶ 89.) PPC also defines "coaxial cable drop connectors" in its proposed amended counterclaim. (*Id.* at ¶ 88.)

T&B claims that PPC has failed to allege facts that provide a basis to carve out a product market for "compression coaxial cable drop connectors" separate from "coaxial cable drop connectors." In particular, T&B claims that PPC has not alleged a sufficient product market in its proposed amended counterclaims because it has not set forth any allegations concerning the functionality or cross-elasticity of the products.

The determination of the relevant market is a question of law applied to the facts of the particular case. *White and White, Inc. v. Am. Hosp. Supply Corp.*, 723 F.2d 495, 499 (6th Cir. 1983). The test for ascertaining the relevant product market is the "reasonable interchangeability" standard, which involves identifying products that are either identical to or available substitutes for the product. *Id.* at 500. Reasonable

5

interchangeability is gauged by (1) the product uses (i.e. whether the products can perform the same functions) and (2) cross-elasticity (i.e. consumer sensitivity to price levels at which they elect substitutes). *Id.*

In its reply, PPC acknowledges that, at some point, the court will need to determine the relevant product market by evaluating functionality and cross-elasticity. However, PPC states that the court should undertake that fact-sensitive inquiry after discovery. *See e.g. Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc.*, 795 F. Supp. 639, 646-47 (S.D.N.Y. 1992)(denying a 12(b)(6) motion to dismiss because arguments on substitutability and cross-elasticity are more appropriate after discovery); *L&W/Lindco Prods., Inc. v. Pure Asphalt Co.*, 979 F.Supp. 632, 638 (N.D. Ill. 1997)(finding that the plaintiff sufficiently defined the market for the purposes of a 12(b)(6) motion to dismiss because product and geographic market definitions are fact questions ordinarily determined at trial); *Continental Airlines, Inc. v. United Airlines, Inc.*, 120 F. Supp. 2d 556, 568 (E.D. Va. 2000)(denying a 12(b)(6) motion to dismiss where the alleged market was not "patently implausible" because the definition of a relevant market is a highly fact-intensive inquiry that requires development of a factual record). For now, PPC argues that it has expressly pled a specific product market that is sufficient to give T&B fair notice

of the product market it proposes. In contrast, in *Cupp v. Alberto-Culver USA, Inc.*, 310 F.Supp.2d 963, 971-72 (W.D. Tenn. 2004), cited by T&B, the plaintiff defined the relevant product market as "hair care products" but failed to state what products were included or excluded from that definition. Similarly, in *Barry Fiala, Inc. v. Arthur Blank & Co.*, 2003 WL 22309442 at *7 (W.D. Tenn. 2003), the defendant did not attempt to define the product market.

In the present case, PPC's proposed amended counterclaims adequately define the product market as the "compression coaxial cable drop connector market" for the purpose of pleadings. Because discovery has just begun, it would be premature to consider factual issues of functionality and cross-elasticity of the products. As a result, the court declines to find the proposed amended counterclaims concerning monopolization and attempted monopolization futile due to PPC's definition of the product market.

b.   Geographic Markets

With respect to geographic markets, PPC's proposed amended counterclaim alleging monopolization states that "T&B possesses monopoly power in the Untied [sic] States in the market for compression coaxial cable drop connectors" and "T&B has unlawfully monopolized United States commerce in the compression connector

7

market through impermissible exclusionary and anticompetitive conduct. . . ." (Proposed Amended Answer & Counterclaims, ¶¶ 107 & 112.) Similarly, PPC's proposed amended counterclaim alleging attempted monopolization states that "T&B has acted with the specific intent to monopolize the compression connector market in the United States" and "To the extent that T&B does not already possess monopoly power in the compression connector market in the United States, there is a dangerous probability that T&B's willful, exclusionary and anticompetitive actions will, if left unchecked, enable T&B to achieve monopoly power in the Untied [sic] States. . . ." (Id. at ¶¶ 117-18.)

T&B claims that PPC has not sufficiently defined the geographic market because it references a "worldwide market," "Israel," and "international distributors" in its monopolization claim and incorporates those allegations into its attempted monopolization claim. (See id. at ¶¶ 92, 104, 105.) T&B claims that these allegations are similar to those dismissed pursuant to Rule 12(b)(6) in Cupp v. Alberto-Culver USA, Inc., 310 F.Supp.2d 963, 970 (W.D. Tenn. 2004), where the plaintiff variously mentioned defendant's local and international reach without specifying the geographic market of competition.

In its reply, PPC states that its allegations are more than sufficient to give T&B fair notice of its proposed geographic

market of the United States. To the extent that other allegations relate to T&B's activities directed outside of the United States, PPC argues that those allegations do not disturb PPC's express definition of the United States geographic market but simply provide further evidence of T&B's intent to monopolize and support of PPC's unfair competition claim. Furthermore, PPC argues that it has expressly pled a specific geographic market of the United States, unlike the plaintiff in the *Cupp* case cited by T&B. PPC points out that the plaintiff in *Cupp* provided vague references to the sales activities of seven international and American defendants. *Cupp*, 310 F.Supp.2d at 970. Similarly, PPC notes that in *Barry Fiala*, another case relied on extensively by the plaintiffs, the court stated that the defendant did not even attempt to define the geographic market. *Barry Fiala*, 2003 WL 22309442 at *7.

Here, PPC's proposed amended counterclaims specifically define the geographical market as the United States. Furthermore, T&B appears to concede that the United States would be a sufficient geographic market, while overlooking the fact that both the monopolization and attempted monopolization claims define the market as the United States: "Unlike defendant's monopoly claims, defendant's attempted monopoly claims make reference to monopolization of the compression connector market in the United

9

States. Nonetheless, defendant incorporates all its allegations from the monopolization claims into the attempted monopolization claims thereby incorporating the various potential geographic markets – worldwide, international, Israel, etc. – into its attempted monopoly claim." (Pls.' Memo. In Opp. at 4 n. 1 (internal quotations and citations omitted).) As a result, the court declines to find the proposed amended counterclaims concerning monopolization and attempted monopolization futile due to PPC's definition of the geographic market.

### 2. Monopoly Power Or Dangerous Probability Of Obtaining Monopoly Power

PPC's proposed amended counterclaim states that "T&B currently controls between 45 and 55 percent of the worldwide and United States compression connector market." (Proposed Amended Answer & Counterclaims, ¶ 92.) PPC also states that "T&B possesses monopoly power in the United States in the market for compression coaxial drop connectors." (*Id.* at ¶ 107.)

T&B claims that because a market share calculation requires proper definition of the relevant product and geographic markets and PPC has not properly defined those markets, PPC's allegations concerning market share are meaningless. The court rejects this argument, however, because the court has already concluded that PPC's proposed amended answer and counterclaims specifically

10

defines the geographical market as the United States.  In addition, the court must construe the factual allegations in the counterclaim in the light most favorable to PPC.  Therefore, the market share allegation must be read to allege that T&B controls between 45 and 55 percent of the worldwide market <u>and</u> between 45 and 55 percent of the United States market.

T&B also claims that, even if PPC properly defined the relevant product and geographic markets, PPC's market share allegations are insufficient as a matter of law.  T&B cites *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966), for the proposition that, in the absence of other evidence, monopoly power may be inferred from a party's share of 66 percent of the market or more for a monopoly claim.  Similarly, T&B cites *Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413, 1432 (6th Cir. 1990), for the proposition that, absent factual allegations establishing that an entity controls pricing or restricts output, a market share in excess of 50 percent is necessary to meet the dangerous probability of success requirement for an attempted monopoly claim.

PPC insists that its allegations are not insufficient as a matter of law.  PPC maintains that the Supreme Court in *Grinnell* did not establish a minimum market share percentage required to show a monopoly but instead merely cited three examples where there was monopoly power with 66, 87 and 90 percent market shares.

11

*Grinnell*, 384 U.S. at 570-71.   PPC points to several decisions which have held that a market share between 45 and 55 percent may be sufficient to establish monopoly power.   *See e.g. Reazin v. Blue Cross and Blue Shield of Kansas, Inc.* 899 F.2d 951, 969-70 (10th Cir. 1990)(stating that a 47 to 62 percent market share does not prohibit, as a matter of law, a conclusion of monopoly power); *Hayden Publishing Co. v. Cox Broadcasting Corp.*, 730 F.2d 64, 69 n.7 (2d Cir. 1984)(stating that a party may have monopoly power even though its market share is less than 50 percent).

PPC also argues that, because a 45 to 55 percent market share may be sufficient to show monopoly power, its allegation of a 45 to 55 percent market share is clearly sufficient to show a dangerous probability of obtaining monopoly power.   PPC points out that T&B admits as much by stating that a market share in excess of 50 percent is necessary to meet the dangerous probability of success requirement.   PPC cites several cases that have found that even smaller market share percentages may support an attempted monopolization claim.   *See e.g. L&W/Lindco Prods., Inc. v. Pure Asphalt Co.*, 979 F.Supp. 632, 637 (N.D. Ill. 1997)(denying motion to dismiss attempted monopolization claim where plaintiff alleged 40 percent market share); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1300-01 (9th Cir. 1982)(affirming district court's holding of attempted monopolization by a defendant

with a 24 percent market share).

As PPC points out, *Grinnell* does not hold that a 45 to 55 percent market share would be insufficient as a matter of law, nor does it establish a minimum market share that would satisfy the element of monopoly power.  Instead, the Court merely states that the existence of monopoly power may be inferred from the "predominant share of the market" and cites cases in which 66 percent, 87 percent and 90 percent market shares were sufficient. *Grinnell*, 384 U.S. at 571.  In addition, as PPC argues, some courts have found that market shares similar to or smaller than those alleged by PPC may be sufficient to establish monopoly power or dangerous probability of obtaining monopoly power.  Consequently, the court declines to find the proposed amended counterclaims concerning monopolization and attempted monopolization futile due to PPC's allegation of a 45 to 55 percent market share.

B.   PPC's Proposed Counterclaim Alleging Unfair Competition

T&B claims that PPC's proposed amended counterclaim concerning unfair competition fails to allege any of the legal or factual elements of an unfair competition claim.  According to T&B, the tort of unfair competition under Tennessee common law requires three elements: (1) the defendant engaged in conduct that "passed off" its organization or services for that of the plaintiff; (2) in engaging in such conduct, the defendant acted with an intent to

deceive the public as to the source of the services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of its organization. *Hickory Specialties, Inc. v. Forest Flavors, Int'l, Inc.*, 12 F.Supp.2d 760, 766 (M.D. Tenn. 1998). Although PPC alleges in a conclusory fashion that "T&B's conduct, as described above, constitutes unfair competition in violation of the common law of the State of Tennessee," T&B claims that PPC never alleged that T&B intended to deceive the public by passing off their products for those of PPC. (Proposed Amended Answer & Counterclaims, ¶ 124.)

In its reply, PPC argues that Tennessee courts have extended the tort of unfair competition beyond the context of trademark infringement and will now recognize a claim of unfair competition when a defendant engages in any conduct that amounts to a recognized tort that deprives the plaintiff of customers or other prospects. *See B&L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 215 (Tenn. Ct. App. 2004). PPC states that its proposed amended unfair competition counterclaim contains sufficient allegations because it alleges that (1) T&B unfairly interfered with PPC's business relationships with distributors with the purpose of harming PPC's business and (2) T&B made intentional material misrepresentations and omissions to the Patent Office in

14

order to damage PPC's business and that conduct resulted in damage to PPC.  (*See generally* Proposed Amended Answer & Counterclaims, ¶¶ 103-105; ¶¶ 60-83 & 99-101.)

Because Tennessee courts have extended the tort of unfair competition beyond the context of trademark infringement to include other tortious activities, PPC is not required to plead the specific elements cited by T&B.  The court therefore declines to find the proposed amended counterclaim concerning unfair competition futile.

Accordingly, defendant PPC's motion for leave to file amended answer and counterclaims is granted.  The defendant shall file its amended answer and counterclaim within eleven (11) days of the date of service of this order and serve it on the plaintiffs as required by the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 30th day of November, 2005.

Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 32 in case 2:05-CV-02333 was distributed by fax, mail, or direct printing on December 2, 2005 to the parties listed.

---

Charles F. Newman
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103--221

Kelly A. Clement
HOWREY SIMON ARNOLD & WHITE LLP
1299 Pennsylvania Avenue N. W.
Washington, DC 20004

Jonathan C. Hancock
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Eric S. Schlichter
HOWREY LLP
750 Bering Drive
Houston, TX 77057

James R. Muldoon
WALL MARJAMA & BILINSKI, LLP
101 S. Salina St.
Ste. 400
Syracuse, NY 13202

Alan M. Fisch
HOWREY SIMON ARNOLD & WHITE LLP
1299 Pennsylvania Avenue N. W.
Washington, DC 20004

Jef Feibelman
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103

Jason F. Hoffman
HOWREY SIMON ARNOLD & WHITE LLP
1299 Pennsylvania Avenue N. W.
Washington, DC 20004


Honorable Samuel Mays
US DISTRICT COURT